OPINION OF THE COURT
Renee R. Roth, S.
The trustees of two New York irrevocable inter vivos trusts seek permission to terminate such trusts and create substantially identical new ones in Florida pursuant to EPTL 10-6.6 *1029 (b) (2). By permitting trustees to appoint trust principal in favor of new modified trusts, this relatively recent statute (L 1992, ch 591, eff July 24, 1992) effectively allows the amendment of irrevocable trusts under certain circumstances. In the instant case, by changing the situs and the governing law of these trusts, the trustees expect that the trusts will be shielded from New York real property transfer gains taxes.
The two trusts were created at different times by Murray Riese for the life income benefit of his son, Dennis. Under the agreement dated December 30, 1986 (Trust No. 1), the trustee has absolute discretion to invade principal for Dennis’ benefit. Unless earlier terminated by the trustee’s exercise of such discretion, the trust terminates upon the first to die of the grantor and Dennis. If the grantor dies first, the balance of principal is payable to Dennis, outright. If Dennis dies first, he is granted a special testamentary power of appointment. In the default of his exercise of the power, principal is payable to his then-living issue, or in default of such issue, to his distributees (other than the grantor).
Under the agreement dated May 17, 1993 (Trust No. 2), the trustees also have absolute discretion to invade principal for Dennis’ benefit. At Dennis’ death, the trust terminates in favor of his then-living issue.
Under EPTL 10-6.6 (b) (2), a trustee with absolute discretion to invade principal for the income beneficiary’s benefit is authorized to apply to the court for permission to exercise such discretion in favor of a trustee of another trust for that beneficiary, rather than distributing the assets to the beneficiary directly, provided, however, that: "(A) the exercise of such discretion does not reduce any fixed income interest of any income beneficiary of the trust, (B) the exercise of such discretion is in favor of the beneficiaries of the trust, and (C) does not violate the limitations of [EPTL] 11-1.7.”
Although the statute was intended to assist trustees in taking maximum advantage of generation-skipping transfer (GST) tax exemptions, it clearly can be used for other purposes (see, Matter of Kaskel, 163 Misc 2d 203, where certain distressed real estate investments were transferred from spendthrift trusts to new nonspendthrift trusts, in an attempt to limit the liabilities of the trusts and the parties).
Here, petitioners ask the court to apply the statute to enable them to protect the trusts and the parties, including the trustees themselves, from New York real property trans *1030 fer gains taxes and to change the situs of the trusts and the governing law from New York to Florida. Furthermore, with respect to Trust No. 1, the new trust will continue for Dennis’ life income benefit, without the possibility of earlier termination at the death of the grantor, in order to protect the trust assets from any potential creditors of Dennis. The trustees also ask to be given discretion to make future situs changes as they deem advisable.
The trust assets consist of certain shares of stock, which have been pledged as security for loans. The pledged shares are currently in the possession of the creditors. The loans are in technical default and, if negotiations for their restructuring are not successful, the creditors may foreclose on the pledged shares. The loan principal currently exceeds the value of the pledged shares. Moreover, the foreclosure might constitute the transfer of a controlling interest in real estate which could trigger transfer gains tax liability. The trustees are concerned that they may be held personally liable for the transfer gains taxes should such taxes exceed the value of the assets held in trust. The trustees suggest that by moving the situs of the trusts and changing their governing law, a number of contacts with the State of New York will have been terminated, thereby supporting the legal position of nonliability of the trustees for such taxes in the event of foreclosure. The trustees indicate that they have every hope that the negotiations for the restructuring of the loans will succeed, that the debt eventually will be paid and that the shares will regain their value.
All adult beneficiaries consent to the requested relief. A guardian ad litem appointed for Dennis’ issue recommends approval on the ground that his wards’ interests depend entirely upon the continued existence of the trusts. The trustees advise that if the application is not granted and the loans cannot be restructured, the most realistic alternative to facing the consequences of a foreclosure on the pledge agreement (and the possibility of the trustees’ exposure to personal liability for transfer gains taxes) is to exercise their invasion powers to terminate the trusts in favor of the income beneficiary. The only other alternative available to the trustees would be to resign.
The trustees are aware that even if the trust administration is moved to Florida, New York State fiduciary income taxes *1031 may still apply and that the trust also may be subject to the Florida intangible property tax. Such potential income tax liabilities, however, are dependent upon the trusts regaining their value.
The proposed new trusts appear to satisfy the requirements of EPTL 10-6.6 (b) (2) in all respects: (A) the exercise of such discretion does not reduce any fixed income interest of any income beneficiary of the trusts; (B) the exercise of such discretion is in favor of the beneficiaries of the trusts; and (C) the new trusts do not violate the testamentary trust limitations of EPTL 11-1.7 (the provisions of which are expressly incorporated into the new trust agreements). The new trusts also satisfy the requirement of EPTL 10-6.6 (c) in that the trustees’ exercise of discretion will not result in any increased commissions.
The only issues are whether the statute permits the removal of the trust to another jurisdiction and whether the trustees should be allowed to insulate themselves from personal exposure to transfer gains taxes. Our courts routinely allow trusts to be moved to another State for their orderly administration (see, Matter of Hudson, 29 AD2d 145, affd 23 NY2d 834; Matter of Weinberger, 21 AD2d 780). If the situs of a trust can be changed merely to facilitate its administration, surely it is even more appropriate to permit such removal to protect the fund itself. There is nothing on the face of EPTL 10-6.6 or in its legislative history that mandates that the new trusts be governed by New York law or that they remain here.
It is observed parenthetically that were the trustees to seek permission to resign, the court, under the circumstances, would be compelled to grant their request. The trusts would then be left without a fiduciary as it is unlikely that others would be willing to assume responsibility in the face of the potential for exposure to personal liability. The law does not require fiduciaries to remain in office when confronted with the possibility of such dire consequences. Finally, the trustees’ request for authority to move the trusts from Florida, if that becomes necessary in the future, is granted subject to Florida law.
Based on the foregoing, decrees have been signed granting the applications.